Filed 12/14/21  In re N.D. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re N.D. et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B312044 (Super. Ct. Nos. 19JV00160, 19JV00161) (Santa Barbara County) |
| SANTA BARBARA COUNTY CHILD WELFARE SERVICES, Plaintiff and Respondent, v. N.A., Defendant and Appellant. | |

N.A. (Father) appeals from the juvenile court's order terminating his parental rights to his two twin children and selecting adoption as the permanent plan.  (Welf. & Inst. Code,[1]

---

[1]Further unspecified statutory references are to the Welfare and Institutions Code.

§ 366.26.)

In his prior appeal, Father challenged the disposition order removing his children from his custody and placing them in foster care on the ground that the inquiry and notice requirements of the Indian Child Welfare Act of 1978 (ICWA) (§ 224 et seq.; 25 U.S.C. § 1901 et seq.) had not been satisfied. We conditionally remanded to the juvenile court for the limited purpose of allowing Santa Barbara County Child Welfare Services (CWS) to comply with ICWA inquiry and notice requirements. (*In re N.D.* (2020) 46 Cal.App.5th 620, 624.) In this appeal, Father once again argues that CWS failed to comply with ICWA inquiry requirements. We disagree and affirm.

## FACTUAL AND PROCEDURAL HISTORY

*Procedural History Prior to the First Appeal*

CWS filed a petition alleging that Father's children were at substantial risk of harm due to his criminal history, including domestic violence. At the detention hearing, Father said he had Native American ancestry through his paternal grandmother, but he did not know which tribe. On a Parental Notification of Indian Status form (ICWA-020 form), he stated he may have "Indian ancestry" through his father (paternal grandfather) and grandmother (paternal great-grandmother) and provided their names. At the detention hearing, S.R. (Mother) said she did not have Native American heritage. She also stated she did not have "Indian ancestry" on the ICWA-20 form.

In the jurisdiction report, CWS included an ICWA matrix, which showed that it obtained names and other information for Father, paternal grandfather, and paternal great-grandparents. CWS attempted to contact Father and mailed him an ICWA questionnaire, which was never returned.

2

CWS also reported that Mother said she had Native American ancestry but did not know which tribe. CWS interviewed maternal great-grandmother and asked about Native American ancestry. She responded that "there might be but she was not sure."

At the jurisdiction hearing, the court found true the allegations in the petition. At the disposition hearing, CWS's investigation into Father's Native American heritage was still ongoing. The court ordered the children to remain in foster care and ordered reunification services for Father. It did not make a finding on whether ICWA applied.

Father filed a notice of appeal from the disposition order in September 2019. We conditionally remanded the matter. (*In re N.D.*, *supra*, 46 Cal.App.5th at p. 624.)

*Procedural History After the First Appeal*

After Father filed his notice of appeal in the first appeal, CWS again attempted to contact Father and left a voice message with callback information. It also mailed him another questionnaire at an alternate address, and it mailed a questionnaire to paternal grandfather. These unopened questionnaires were returned to sender as undeliverable.

CWS mailed an ICWA Notice of Child Custody Proceeding (ICWA-030 form) to the Bureau of Indian Affairs, Secretary of the Interior, Father, and Mother. Both of the notices sent to Father and Mother were returned to sender for "insufficient address." CWS attached a letter with the notices sent to the Bureau of Indian Affairs and the Secretary of the Interior in which CWS stated that it had "conducted a diligent search to obtain as much family ancestry information as possible" and requested that the agencies "search [their] census roll to

3

determine if this child is eligible for enrollment or enrolled" with a tribe. The notices included all ancestry information known to CWS, including Mother and Father's names, birthdates, addresses, and the names of other family members, including maternal and paternal grandparents and paternal great-grandparents. The reports reflect that CWS had no additional information.

Two months later, CWS filed with the court the certified return receipts of the ICWA notifications, including the delivery receipts for the Bureau of Indian Affairs and the Secretary of the Interior.

In the six-month status review report, CWS updated the ICWA matrix regarding its investigation, including its attempts to contact Father and Grandfather. CWS reported that it "received all of the response letters" and recommended that the juvenile court find that ICWA does not apply.

At the six-month status hearing in January 2020, the court found that ICWA did not apply. All parties submitted on CWS's recommendations.

In October 2020, after we issued remittitur in the first appeal, the juvenile court held a hearing, in which it confirmed its finding that ICWA did not apply. The court stated that the ICWA finding "was made following the disposition and following the additional documentation being provided. The issue has been addressed and complied with." All parties submitted on the ruling.

At the 12-month hearing, the court found Father made minimal progress with his services and continued the services. At the 18-month hearing, the court terminated Father's reunification services and set a section 366.26 hearing.

4

In April 2021, the court terminated Father's parental rights and found the children were adoptable. (§ 366.26.)

**DISCUSSION**

Father's sole contention on appeal is that CWS and the court did not comply with their duty of further inquiry before his parental rights were terminated. We disagree.

CWS and the juvenile court "have an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child." (§ 224.2, subd. (a).)[2] Once a child is placed into temporary custody of a county welfare department, the duty to inquire "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child . . . whether the child is, or may be, an Indian child." (*Id.* at subd. (b).)

"If the court, social worker . . . has *reason to believe* that an Indian child is involved in a proceeding, *but does not have sufficient information to determine that there is a reason to know* that the child is an Indian child, the court, social worker . . . shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable." (§ 224.2, subd. (e), italics added.) "There is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker . . . has information suggesting that either the parent of the child or the child is a member or may be eligible

---

[2] Section 224.2 has recently been amended and the most recent version became effective September 18, 2020. (Assem. Bill No. 2944 (2019-2020 Reg. Sess.); Stats. 2020, ch. 104, § 15.) The most recent version of statute was effective at the time of the April 2021 section 366.26 hearing and is applicable to this appeal.

5

for membership in an Indian tribe. Information suggesting membership or eligibility for membership includes, but is not limited to, information that indicates, but does not establish, the existence of one or more of the grounds for reasons to know [pursuant to subdivision (d)(1)-(6)]." (*Id.* at subd. (e)(1).)

The duty of further inquiry includes (A) interviewing the parents and extended family members; (B) contacting the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying names and contact information of the tribes in which the child may be a member; and (C) contacting the tribe and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility. (§ 224.2, subd. (e)(2).)

If, after proper and adequate further inquiry has been made, there is "no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence. The court shall reverse its determination if it subsequently receives information providing reason to believe that the child is an Indian child and order the social worker . . . to conduct further inquiry pursuant to Section 224.3." (§ 224.2, subd. (i)(2).)[3]

_____

[3] The inquiry stage is "distinct from formal ICWA notice, which requires a 'reason to know' —rather than a 'reason to believe'—that the child is an Indian child." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1049); see also § 224.3, subd. (a).) Notice must be provided to the relevant tribes only if the inquiry establishes "a reason to know" an Indian child is involved. (§ 224.3, subds. (a), (b).) Father does not challenge ICWA notice compliance here.

We review a juvenile court's determination regarding ICWA compliance for substantial evidence. (*In re E.W.* (2009) 170 Cal.App.4th 396, 404.)

Substantial evidence supports the juvenile court's finding that CWS complied with its duty of ICWA inquiry. Father stated that he had Native American ancestry through paternal great-grandmother, but did not know which tribe. Based on this statement, there was *a reason to believe*[4] his children were Native American children, and further inquiry was necessary.

Father argues that CWS failed to conduct "a diligent further inquiry with both Father and Mother and their available relatives," including paternal grandfather, paternal great-grandmother, Mother, and other maternal relatives. The record does not support his argument.

---

[4] We recognize that our conclusion that there was a "reason to believe," and not a "reason to know," at this stage is inconsistent with our determination in the prior appeal, *In re N.D., supra*, 46 Cal.App.5th 620. At the time of the disposition order (from which Father previously appealed), the previous version of section 224.2 was in effect. (Assem. Bill No. 3176 (2017-2018 Reg. Sess.); Stats. 2018, ch. 833, § 5, eff. Jan. 1, 2019.) As explained above (*ante*, fn. 2), the statute has since been amended and the most recent version is applicable to this appeal. The Legislature has included language in the most recent version which clarifies the difference between the "reason to believe" and "reason to know" standards. Moreover, our conclusion here is consistent with cases filed contemporaneously or after our previous decision that have directly examined these different standards. (*In re T.G.* (2020) 58 Cal.App.5th 275; *In re A.M.* (2020) 47 Cal.App.5th 303; *In re D.S., supra*, 46 Cal.App.5th 1041.)

First, CWS attempted to call Father and obtained the names and other information for Father, paternal grandfather, and paternal great-grandparents. No contact information was reported for paternal great-grandparents. After Father filed the first appeal, CWS continued its efforts by attempting to call Father again and sending him and paternal grandfather an ICWA questionnaire at their known addresses. Any attempts to contact Father and paternal grandfather were unsuccessful—CWS left voicemails with callback information for Father, and any mail correspondences were returned to sender. Meanwhile, CWS fulfilled its obligation to contact the Bureau of Indian Affairs and Secretary of the Interior for assistance in identifying the tribes to which the children may be members. (§ 242.2, subd. (e)(2)(B).) It sent an ICWA-030 notice form to the Bureau of Indian Affairs and the Secretary of the Interior, and attached a letter in which it requested these agencies to "search [their] census roll to determine if this child is eligible for enrollment or enrolled" with a tribe. The record does not reflect any further information was obtained from these contacts.

Second, the evidence supports a finding that CWS complied with its duty of inquiry into Mother's claim of Native American ancestry. Mother stated that she had Native American ancestry but did not know which tribe. CWS did not report that Mother provided any leads into her Native American ancestry. Nonetheless, CWS interviewed her maternal great-grandmother, who said that "there might be [Native American ancestry], but she was not sure." CWS also attempted to contact maternal aunt, but she was unavailable and was provided a callback number. CWS was not required to "cast about" for further investigative leads within the family. (*In re Levi U.* (2000) 78

8

Cal.App.4th 191, 199, superseded on other ground by statute as stated in *In re B.E.* (2020) 46 Cal.App.5th 932, 940; see also *In re A.M.*, *supra*, 47 Cal.App.5th at p. 323 [agency complies with the inquiry requirement where there is no "viable lead," where the parent does not provide the agency with information requiring a follow-up, or where the family members refuse to talk to the agency]; *In re D.S.*, *supra*, 46 Cal.App.5th at p. 1053 [agency was not required to pursue unproductive investigative leads with extended family members].)

Based on this record, the court properly found that CWS complied with its duty of ICWA inquiry. In light of our opinion, we need not address CWS's waiver argument.

## DISPOSITION

The order (terminating the Father's parental rights) is affirmed.

NOT TO BE PUBLISHED.

TANGEMAN, J.

We concur:

GILBERT, P. J.

PERREN, J.

9

Arthur A. Garcia, Judge

Superior Court County of Santa Barbara

_____

Patricia K. Saucier, under appointment by the Court of Appeal, for Defendant and Appellant.

Rachel Van Mullem, County Counsel, Lisa A. Rothstein, Deputy County Counsel, for Plaintiff and Respondent.